Myers *v.* Davis.

[BROOME GENERAL TERM, January 5, 1858.    *Gray, Mason* and *Balcom,* Justices.]

———————◆———————

## MYERS *vs.* DAVIS and others.

Where there had been mutual dealings between the defendants, who were manufacturers of churns, cultivators, &c., and W. & L., merchants at O., in the course of which, work ordered from the defendants by W. & L. had been from time to time applied on the account of the defendants; and on the 9th of February, 1855, W. & L. ordered from the defendants a quantity of churns and cultivators, to be manufactured and sent to them, agreeing to furnish the zinc necessary for their manufacture, which was accordingly sent to the defendants, and charged in their account; *Held,* that although there was no *express* agreement that the churns and cultivators, when completed, should apply upon the defendants' account, an agreement to that effect would be *implied* from the circumstances ; and that upon completing and offering to deliver the churns &c. to W. & L., the defendants were entitled to have the same credited to their account with W. & L., although the latter had in the meantime failed, and assigned their property to the plaintiff in trust for the benefit of creditors.

*Held also,* that the price of the articles manufactured under this agreement became a debt against W. &. L., which was a good set-off against their account, and formed a good defense to an action thereon, brought by the assignee of W. & L.

*Held further,* that the manufactory of the defendants being at a distance of 40 miles from the residence of W. & L., and the articles manufactured being of a bulky character, it was not necessary for the defendants to make a manual *tender* of the articles after a refusal to accept the same; that it was sufficient for them to notify W. & L. and the plaintiff that the articles were ready, and to offer to send so many thereof as would suffice to liquidate their indebtedness to W. & L.

THIS action was brought by the plaintiff as assignee of Watrous & Lawrence, an insolvent firm in Ogdensburgh, to recover against the defendants, as copartners, the balance of an account for goods sold and money advanced on exchange of notes, and interest. The complaint averred an assignment of the demand to the plaintiff for the benefit of creditors, and claimed to recover $491.38. The answer was 1. A general denial of the complaint. 2. An allegation that on the 7th Feb. 1855, Watrous & Lawrence ordered from the defendants, and requested them to manufacture and send them, one hundred churns of different numbers, and also twenty iron-tooth cultivators, and thirty steel-tooth cultivators; that it was agreed that Watrous & Lawrence should furnish materials therefor, and that all such materials and any other goods the defendants might purchase from Watrous & Lawrence should apply on and towards the price of said churns and cultivators; that pursuant to that agreement, the defendants purchased the goods mentioned in the complaint; that they fulfilled the order with diligence, and tendered and offered the churns and cultivators, on their completion, to Watrous & Lawrence and to the plaintiff, on the 30th of March, 1855; that the price of the churns and cultivators was more than the account, and the defendants requested Watrous & Lawrence and the plaintiff to accept the same and pay the difference, which they refused to do; that said defendants still have said churns and cultivators ready for the plaintiff; and that the goods in the complaint mentioned were used in making, and form a part of, the said churns and cultivators. 3. The answer set up by way of counter claim, that before the assignment to the plaintiff, Watrous & Lawrence were indebted to the defendants in the sum of $700, for work, and labor and materials, and for divers churns and cultivators, by the defendants before then bargained and sold to Watrous & Lawrence. The plaintiff replied denying the counter claim. The cause was tried at the St. Lawrence circuit, without a jury. The judge who presided at the trial found the following facts: That, for several

Myers *v.* Davis.

years previous to the 20th of March, 1855, the firm of Watrous & Lawrence were doing business at Ogdensburgh; that they stopped payment on that day, and assigned all their property and effects to the plaintiff in trust for their creditors; that among the debts so assigned was an account against the defendants, amounting to $491.38, to recover which the action was brought; that previous to said assignment there had been mutual deal between the firm of Watrous & Lawrence and the defendants, in which work ordered from the defendants was applied on their account; that in their deal the defendants were entitled to a credit of six months; that on the 7th of February, 1858, Watrous & Lawrence ordered from the defendants, to be manufactured and sent to them, one hundred patent churns and fifty cultivators; that Watrous & Lawrence were to furnish, and did furnish, the zinc for the manufacture of the churns, which was received of the defendants on the 23d of March, 1855, and is one of the items charged in the account sued on, at $133.10; that the churns and cultivators were all finished and ready to be sent forward about the middle of May, 1855, and within a reasonable time after they were ordered, considering the means of manufacture possessed by the defendants; that neither the churns or cultivators were ever sent to the plaintiff or to Watrous & Lawrence; that on the 21st of May, 1855, the defendants gave notice to Watrous & Lawrence and to the plaintiff, that the churns and cultivators were completed and ready to be sent, on receiving security for the balance which would be due them, or they would send, of the articles, to the amount of the account for which suit was brought; that the plaintiff said it was too late, he had no use for the articles, and would not receive them; that there was no proof of any previous demand of the articles or any part of them by the plaintiff or Watrous & Lawrence, nor was there any notice to the defendants from Watrous & Lawrence, or the plaintiff, not to manufacture or fulfill the order; that the defendants' place of business was at Brasher's Falls, where the churns

were manufactured, about 40 miles from Ogdensburgh; that the articles were very bulky and could not be tendered in kind, without great inconvenience and expense; that the value of the churns and cultivators was $647, exceeding the account by $155.62; that the churns and cultivators still remain on hand at Brasher's Falls; that there was no *express* agreement that the churns and cultivators should apply on the account sued upon. Upon these facts the judge decided that the offer made by the defendants on the 21st day of May, 1855, followed by a refusal to accept, together with the bulky character of the articles, was a sufficient excuse for not tendering the articles themselves; that the insolvency of Watrous & Lawrence, after the manufacture of the articles was commenced and before they were completed, entitled the defendants to demand pay or security for the overplus, before sending the property, and that an offer to deliver sufficient to pay their account, had it been accepted, would have entitled the plaintiff to so much of the property, without assuming to pay the overplus; that the work having been performed in pursuance of the orders except when performance was excused by the circumstances of the case, the price of the manufacture became a debt against Watrous & Lawrence, which was a good set-off against the account, and a good defense to the action. The judge therefore ordered the complaint to be dismissed with costs, and the plaintiff excepted. Judgment was . entered on the finding and order of the judge, from which the plaintiff appealed.

*Charles G. Myers*, plaintiff, in person.

*Brown & Spencer*, for the defendants.

*By the Court*, C. L. ALLEN, P. J. The defendants' counsel insists that the justice finds no such special agreement as alleged in the second answer of the defendants. It is true that the finding states that there was no *express agreement;* but that there had been mutual deal, between the defendants

and Watrous & Lawrence, previous to the assignment, in which work ordered from the defendants was applied on their account; that on the 9th of February, 1855, Watrous & Lawrence ordered from the defendants the churns and cultivators, mentioned in the answer, and were to furnish the zinc necessary for their manufacture, which is one of the items charged in the plaintiff's account. At the same time the order was sent, and at the bottom of it, were these words: "*If you want zinc let us know immediately;*" and as late as the 26th of March, 1855, Watrous & Lawrence, in writing to the defendants, and sending them the amount of their account as then claimed at $470.19, say as follows: "Your farther order is just at hand and being filled for the morrow. We are glad to see you dipping in again, *and suppose our order once completed for churns,* we *shall owe you.*" Taking all these circumstances together, in connection with the testimony of the parties and the other evidence in the case, I think there can be little doubt but an implied agreement was proved that the churns and cultivators should apply upon the account of Watrous & Lawence against the defendants. Why should they inquire in the order, if zinc was wanted immediately, and why should they write on the 26th of March, 1855, that when the order for the churns was completed they should owe the defendants, unless it was perfectly understood between the parties, that they were to be applied in payment of the account? They had been in the habit of dealing in this same manner before, so long, that it was always understood that whatever was made for Watrous & Lawrence, by the defendants, should be offset, on account. The order amounted to a request to the defendants to manufacture the churns and cultivators with ordinary diligence. It is proper we should consider that fact with other evidence in the case. One of the defendants testified that it was expressly agreed, between Watrous & Lawrence and the defendants, that the former should furnish zinc for the churns. This was before the writ-

ten order of the 7th of February, and the evidence was objected to for that reason; but I think it was proper as going to show what was intended by the order. In construing any writing, say the court of appeals in *Blossom* v. *Griffin*, (3 *Kern.* 569, 574,) "it is proper to look at all the *surrounding circumstances; the pre-existing relation between the parties, and then to see what they mean to speak.*"

At all events, the price of the manufacture became a debt against Watrous & Lawrence, which was a good set-off against their account, and formed a good defense to this action; unless the defendants failed to fulfill the order on their part, agreeably to its stipulations. The plaintiff's *first* objection on this ground is, that by the order the articles were to be *sent* to Watrous & Lawrence; that the contract therefore was executory, and no rights under it accrued to the defendants until it was fulfilled on their part. That the articles were never *" sent,"* and the contract therefore never performed. It does not appear that this objection was taken at the trial; but if it was, I think the defendants showed a sufficient excuse for not sending or tendering the articles. They were very bulky, and at a distance from the place of residence of Watrous & Lawrence. It was not practicable to make a manual tender. But the defendants offered, on the 21st of May, to send so many of them as would in value liquidate the amount of their indebtedness to Watrous & Lawrence, and to send the whole, if the plaintiff as assignee would secure to them the balance which would be due to them after deducting their account. To this proposition the plaintiff refused to accede, alleging as his sole reason, that *the defendants were too late;* that *" the manufacture of them was too late—they should have been manufactured before."* Besides, the failure of Watrous & Lawrence, coupled with the plaintiff's refusal to have any thing to do with the property, dispensed with the necessity of a formal tender. It would only have been imposing an unnecessary expense upon one of the parties. I think it is too late

to interpose this objection at this time, and that at all events it is answered by the evidence.

But the plaintiff insists that no time being specified in the order, it should have been complied with within a reasonable time. That the offer to comply was not made until the 19th May, when the best of the season for selling such articles had passed. The testimony on this point was a little variant. The weight of it, however, was, that the best time for selling was in May and June. Be this as it may, the justice who tried the cause has found the fact that the articles were ready to be sent forward about the middle of May, and within a reasonable time after they were ordered, considering the means of manufacture possessed by the defendants; and he adjudged as matter of law, that the offer made, to deliver on the 21st of May, followed by a refusal to accept, together with the bulky character of the articles, was a sufficient excuse for not tendering the articles themselves. In this conclusion I think he was correct. The zinc was to be furnished by Watrous & Lawrence. It was not forwarded until the 20th March; and as late as the 26th, as appears by their letter of that date, they contemplated receiving the articles in a reasonable time thereafter, for they say we " *suppose our order once completed for churns, we shall owe you.*" They knew the situation and means possessed by the defendants for manufacturing the article; and they did not require, nor had they any reason to expect, that the defendants would enlarge their shops, or erect new ones, for the purpose of expediting their order.

It is said the offer of 21st May was invalid, because the articles were not separated from others of a like description, and no title passed to the plaintiff. The justice has substantially found otherwise, and I do not so understand the evidence. It is sufficient, however, to observe, that the plaintiff did not put himself upon this ground at the trial, nor on the other ground sought to be taken here, that the teeth were not

placed in the cultivators. If either objection had been taken at the proper time, it might have been obviated. They cannot be urged now for the first time.

The judgment should be affirmed.

[Montgomery General Term, January 5, 1858. *C. L. Allen, James* and *Rosekrans*, Justices.]